JUDGE FRANK MONTALVO

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

FILED

2022 AUG 15 PM 1:04

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

ERIK SALAIZ, §
§
§
**Plaintiff,** §
§
v. §
§
RANEYS, LLC, a Florida Limited Liability §
Company and **ATTENTIVE MOBILE INC**, a §
Delaware Corporation §
**Defendant.** §
§

# EP22CV0278

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.     The Plaintiff is ERIK SALAIZ ("Plaintiff") a natural person, resident of the Western

District of Texas, and was present in Texas for all automated text messages, in this case in El

Paso County, Texas.

2.     Defendant RANEYS, LLC ("Raney's") is a limited liability company organized and

existing under the laws of Florida with its principal address at 3030 W Silver Springs Road,

Ocala, Florida 34475.  Raney's is a registered Texas foreign limited liability company and can be

served via registered agent Corporation Service Company, DBA CSC-Lawyers INCO, 211 E. 7th

Street, Suite 620, Austin, Texas 78701.

3.     Defendant ATTENTIVE MOBILE, INC ("Attentive") is a corporation organized and

existing under the laws of Delaware and can be served via registered agent The Corporation

Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

4.     Defendant Raney's and Defendant Attentive are hereinafter collectively referred to as

1

"Defendants."

## JURISDICTION AND VENUE

5.      Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter

jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053

because that claim arises from the same nucleus of operative fact, i.e., Defendants' tele market in

robocalls to Plaintiff; adds little complexity to the case.

6.      Personal Jurisdiction.  This Court has general personal jurisdiction over the defendant

because they have repeatedly placed calls and automated text messages to Texas residents, derive

revenue from Texas businesses, and they sell goods and services to Texas residents, including

the Plaintiff.

7.      Venue.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a

substantial part of the events giving rise to the claims—the calls and sale of goods and services

directed at Texas residents, including the Plaintiff—occurred in this District and because the

Plaintiff resides in this District.  Residing in the Western District of Texas when he received a

substantial if not every single automated text message from Defendants are the subject matter of

this lawsuit.

8.      This Court has venue over the defendants because the automated text messages at issue

were sent by or on behalf of the above-named Defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

### OF 1991, 47 U.S.C. § 227

9.      In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing

equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d

4

946, 951 – 52 (9th Cir. 2009).

21.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## OVERVIEW OF THE TEXT MESSAGING MARKETING INDUSTRY

22.     In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

23.     One of the newest types of such marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120-500 characters.

24.     An "SMS message" is a text directed to a wireless device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

25.     The open rate for SMS messages exceeds 99%, and 90% of those messages are read within three minutes. Conversely, the open rate for an email in the finance industry is 21.56%.

26.     Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile

spam can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message or call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

27.     Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six-digit extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services as television program voting or more benevolent uses, such as making charitable donations.

28.     A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

29.     Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F .3d 949 (9th Cir. 2009).

## FACTUAL ALLEGATIONS

30.     Plaintiff's personal cell phone (915) 929-1527 has been registered on the National Do-Not-Call Registry since March 6, 2022.

31.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

32.     Plaintiff received at least thirty-two (32) unauthorized automated text messages ("the text messages") to his personal cell phone ending in 1527 from April 16, 2022, to August 8, 2022, from Defendants soliciting truck parts on behalf of Defendant Raney's. *Please See "Exhibit A."*

33.     Defendant Attentive is the originator of the text messages and sent the text messages to

6

Plaintiff's personal cell phone ending in 1527at the apparent authority and control of Defendant Raney's.

34.     Defendant Attentive has been sued prior to this lawsuit for violating the TCPA *Knox v. Party City Holdings, Inc.* No. 7:20-cv-02613-PMH (S.D.NY., Mar. 27. 2020), *Brenner v. Watch Gang, Inc. et al* No. 4:21-cv-01127-AGF (E.D.MO., Sept. 15, 2021) and continue their illegal behavior because violating the TCPA benefits Defendants financially.

35.     Defendant Raney's is a company that markets and solicits truck parts.

36.     Defendant Raney's hired and authorized Defendant Attentive to send automated text messages en mass to thousands of consumers using an automatic telephone dialing system ("ATDS") to solicit truck parts on behalf of Defendant Raney's.

37.     Defendant Raney's provides the phone numbers to Defendant Attentive to send automated text messages to.

38.     Defendant Attentive knew Plaintiff's phone number ending in 1527 was registered on the national do not call registry while they were sending Plaintiff the text messages, however refused to curtail their illegal behavior because Defendant Raney's pays them a fee for their service.

39.     Defendant Raney's knew Defendant Attentive's software violates the TCPA however violating the TCPA benefits Defendants financially.

40.     Plaintiff has never been a customer or client of Defendants or has never had any business relationship with Defendants.

41.     Plaintiff did not give Defendants his prior express written consent to receive the text messages.

42.     Plaintiff received at least thirty-two automated text messages before realizing that he had been besieged with text messages from Defendants. The text messages had been going to

Plaintiff's spam folder because they were automated causing Plaintiff to not initially see the text messages.

43.    On August 8, 2022, Plaintiff saw the numerous text messages and replied "Stop" in order to cease the harassing messages.

44.    On August 8, 2022, in response to the "Stop" text message, Plaintiff received text message stating "Raney's: You are unsubscribed from messaging. No more messages will be sent. Help at support@attentivemobile.com or 844-293-7265. Both the email address and phone number indicate that Defendant Attentive was the source of the text messages. *Please see Exhibit A.*

45.    Defendant Attentive's business is centered around short message service (SMS). SMS is the very means used to deliver the text messages at issue in this case.

46.    The text messages Plaintiff received from Defendants were generated and sent using an ATDS.

47.    Specifically, in this case, the Defendants' texting software, by virtue of being inextricably linked to a computer operating system, has the capacity to generate random or sequential telephone numbers.

48.    The text messages Plaintiff received from Defendants have caused Plaintiff actual harm. This includes the aggravation, nuisance, and invasions of privacy that result from the placement of such text messages, in addition, to wear and tear on his phone, phone freezing, interference with the use of his phone, and consumption of battery life.

49.    The text messages Plaintiff received from Defendants do not address Plaintiff by name.

50.    Table below displays the automated text messages made to Plaintiff by Defendants:

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1. | 04/16/2022 | 10:06 AM | 91026 | Automated short text message |
| 2. | 04/18/2022 | 3:50 PM | 91026 | Automated short text message |
| 3. | 04/19/2022 | 3:55 PM | 91026 | Automated short text message |
| 4. | 04/27/2022 | 3:56 PM | 91026 | Automated short text message |
| 5. | 05/02/2022 | 10:35 AM | 91026 | Automated short text message |
| 6. | 05/06/2022 | 10:08 AM | 91026 | Automated short text message |
| 7. | 05/09/2022 | 10:08 AM | 91026 | Automated short text message |
| 8. | 05/11/2022 | 9:55 AM | 91026 | Automated short text message |
| 9. | 05/14/2022 | 10:11 AM | 91026 | Automated short text message |
| 10. | 05/20/2022 | 11:10 AM | 91026 | Automated short text message |
| 11. | 05/25/2022 | 9:50 AM | 91026 | Automated short text message |

| 12. | 05/27/2022 | 9:32 AM | 91026 | Automated short text message |
|-----|------------|---------|-------|------------------------------|
| 13. | 05/30/2022 | 10:12 AM | 91026 | Automated short text message |
| 14. | 06/02/2022 | 9:55 AM | 91026 | Automated short text message |
| 15. | 06/06/2022 | 9:56 AM | 91026 | Automated short text message |
| 16. | 06/12/2022 | 10:06 AM | 91026 | Automated short text message |
| 17. | 06/17/2022 | 11:16 AM | 91026 | Automated short text message |
| 18. | 06/20/2022 | 9:55 AM | 91026 | Automated short text message |
| 19. | 06/24/2022 | 4:00 PM | 91026 | Automated short text message |
| 20. | 06/26/2022 | 10:08 AM | 91026 | Automated short text message |
| 21. | 06/27/2022 | 10:35 AM | 91026 | Automated short text message |
| 22. | 07/01/2022 | 9:55 AM | 91026 | Automated short text message |
| 23. | 07/04/2022 | 10:08 AM | 91026 | Automated short text message |

| 24. | 07/08/2022 | 3:55 PM | 91026 | Automated short text message |
|---|---|---|---|---|
| 25. | 07/12/2022 | 12:13 PM | 91026 | Automated short text message |
| 26. | 07/18/2022 | 10:31 AM | 91026 | Automated short text message |
| 27. | 07/23/2022 | 9:56 AM | 91026 | Automated short text message |
| 28. | 07/25/2022 | 9:56 AM | 91026 | Automated short text message |
| 29. | 07/28/2022 | 4:15 PM | 91026 | Automated short text message |
| 30. | 08/04/2022 | 9:55 AM | 91026 | Automated short text message |
| 31. | 08/05/2022 | 4:04 PM | 91026 | Automated short text message |
| 32. | 08/07/2022 | 9:59 AM | 91026 | Automated short text message |

51.  Each of the automated text messages came from short text number 91026.

52.  The text messages Plaintiff received from Defendant were placed while knowingly ignoring the national do-not-call registry. The text messages were placed without training their agents/employees on the use of an internal do-not-call policy.

53.  On August 12, 2022, Plaintiff emailed an internal do-not-call policy request to Defendant Attentive to info@attentive.com, the email address found on Defendant Attentive's Facebook page they own and control https://www.facebook.com/attentiveHQ/.

54.     On August 12, 2022, Plaintiff emailed an internal do-not-call policy request to Defendant

Raney's to cs@raneys.com, the email address found on Defendant Raney's Facebook page they

own and control https://www.facebook.com/raneys.

55.     Defendants failed and/or refused to send Plaintiff a copy of any internal do not call

policy.

56.     On information and belief, Defendants did not have a written do-not-call policy while

they were sending Plaintiff text messages.

57.     No emergency necessitated none of the alleged illegal automated text messages.

58.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming

telemarketing text messages consumed part of this capacity.

## VICARIOUS LIABILITY OF DEFENDANT RANEY'S

59.     Defendant Raney's is vicariously liable for the text messages that were generated to

Plaintiff on their behalf.

60.     The FCC is tasked with promulgating rules and orders related to enforcement of the

TCPA. 47 U.S.C. § 227(b)(2).

61.     The FCC has explained that its "rules generally establish that the party on whose behalf a

solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations

Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13

(1995).

62.     The FCC reiterated that a company on whose behalf a telephone call is made bears the

responsibility for any violations. *In re Rules and Regulations Implementing the Telephone

Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf

of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a

third party on another entity's behalf under 47 U.S.C. § 227(b)).

63.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post

may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave
> consumers in many cases without an effective remedy for telemarketing
> intrusions. This would particularly be so if the telemarketers were
> judgment proof, unidentifiable, or located outside the United States, as is
> often the case. Even where third-party telemarketers are identifiable,
> solvent, and amenable to judgment limiting liability to the telemarketer
> that physically places the call would make enforcement in many cases
> substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer separately
> in order to obtain effective relief. As the FTC noted, because sellers may
> have thousands of independent marketers, suing one or a few of them is
> unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

64.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual

relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the

telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

65.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's

liability requires a finding of formal agency and immediate direction and control over the third-

party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

66.     To the contrary, the FCC—armed with extensive data about robocalls and Americans'

complaints about them—determined that vicarious liability is essential to serve the TCPA's

remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

67.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

68.     Defendant Raney's is legally responsible for ensuring the text messages Defendant Attentive's sent on their behalf comply with the TCPA.

69.     Defendant Raney's knew (or reasonably should have known) that Defendant Attentive's platform was violating the TCPA on their behalf but failed to take effective steps within their power to force Defendant Attentive to cease that conduct.

70.     By hiring a company to generate text messages on its behalf, Defendant Raney's "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

71.     Moreover, Defendant Raney's maintained interim control over the action of Defendant Attentive.

72.     Furthermore, Defendant Raney's had day-to-day control over the actions of Defendant Attentive's platform, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant Raney's and the ability to require them to respect the National Do Not Call Registry.

73.     Defendant Raney's enrolled into Defendant Attentive's automated text message services and gave Defendant Attentive apparent authority to make the text messages at issue. Thus, Defendant Attentive's platform pitched "truck parts" in the abstract.

14

74.    Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

75.    "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

76.    A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

77.    Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

Defendant Raney's is the liable party as the direct beneficiary of the text messages as they stood to gain Plaintiff as a customer when they authorized Defendant Attentive to send the text messages to Plaintiff's personal cell phone soliciting their goods and services.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

78.    Defendants' automated text messages harmed Plaintiff by causing the very harm that

Congress sought to prevent—a "nuisance and invasion of privacy."

79.    Defendants' automated text messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

80.    Defendants' automated text messages harmed Plaintiff by intruding upon Plaintiff's seclusion.

81.    Plaintiff has been harmed, injured, and damaged by the text messages including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

### Plaintiff's cell phone is a residential number

82.    The text messages were to Plaintiff's cellular phone ending in 1527 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

83.    The actions of the Defendants violated the Texas Business and Commerce Code 305.053 by placing automated text messages to a cell phone which violates 47 USC 227(b). The automated text messages by Defendants violated Texas law by placing automated text messages to a cell phone which violates 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

84.    The text messages by Defendants violated Texas law by spoofing the caller IDs per 47 USC 227(e) which in turn violates the Texas statute.

16

## COUNT ONE:

## Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing
### Without Prior Express Written Consent
### (Against All Defendants)

85.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

86.    Defendants and/or their agents placed automated text messages to Plaintiff's cellular telephone.

87.    Plaintiff never consented to receive automated text messages from Defendants.  Plaintiff has had no relationship with Defendants.

88.    Defendants' automated text messages were made for purposes of advertising and marketing their goods and services.  These automated text messages constituted commercial advertising and telemarketing as contemplated by the TCPA.

89.    The automated text messages were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

90.    As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful text message campaigns.

91.    Not only did Defendants make these violating automated text messages, but Defendant and/or their agents also did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

17

92.     If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## COUNT TWO:

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

**(Against All Defendants)**

93.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

94.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

95.     Defendants sent automated text messages to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the automated text messages, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

96.     Plaintiff was statutorily damaged at least thirty-two (32) times under 47 U.S.C. §

227(c)(3)(F) by Defendants by the automated text messages described above, in the amount of

$500 per automated text message.

97.     Plaintiff is entitled to an award of at least $500 in damages for each such violation.

47 U.S.C. § 227(c)(5)(B).

98.     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful

violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:

### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

### (Against All Defendants)

99.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

100.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute

multiple violations of FCC regulations by making telemarketing solicitations despite lacking the

following:

        a.  A written policy, available upon demand, for maintaining a do-not-call list, in

           violation of 47 C.F.R. § 64.1200(d)(1) [2];

        b.  Training for the individuals involved in the telemarketing on the existence of and

           use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [3]; and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

  c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

101. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

102. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR

### Violations of The Texas Business and Commerce Code 305.053

#### (Against All Defendants)

103. Plaintiff incorporates the foregoing allegations as if set forth herein.

104. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing automated text messages to Mr. Salaiz cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

105. Plaintiff is entitled to an award of at least $500 in damages for each such violation.

**Texas Business and Commerce Code 305.053(b)**

106. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c)

---

[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violates the TCPA and Texas state law;

C.      An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $1500 per automated text message in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations for thirty-two automated text messages.

E.      An award of $1500 per automated text message in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations for thirty-two automated text messages.

F.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

G.      An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

H.      An award to Mr. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity

I.      Such further relief as the Court deems necessary, just, and proper.

August 15, 2022                          Respectfully submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-929-1527
Salaiz.ep@gmail.com

2:11  

< **91026** 📞 📹 ⋮

Saturday, April 16, 2022





Raney's: Happy Easter! You're never too old for an egg hunt...
https://raneys.attn.tv/l/zgK/mKfjc

MMS
10:06 AM

Monday, April 18, 2022


Raney's: The Easter Egg Hunt ends at Midnight! It's easy, find the Promo Code and Fill your Cart >>>
https://raneys.attn.tv/l/9Gv/mKfjc

3:50 PM

Tuesday, April 19, 2022

⌄



🖼 📷 ＋ | 🙂 ᴵ�III

Exhibit A

III ◯ <

< 91026   

Tuesday, April 19, 2022



Raney's: Replace your old Fuel Tank, and Protect your Diesel with Locking Fuel Caps & Anti-Siphon Devices! These products are in stock NOW > https://raneys.attn.tv/l/Zrn/mKfjc

MMS
3:55 PM

Wednesday, April 27, 2022



Raney's: Were you searching for a Good Deal? More Products have just been added to CLEARANCE!



       

Exhibit A

||| ◯ ‹

2:16

< **91026**   📞  🎥  ⋮

Wednesday, April 27, 2022



Raney's: Were you searching for a Good Deal? More Products have just been added to CLEARANCE! https://raneys.attn.tv/l/mdz /mKfjc

MMS
3:56 PM

Monday, May 2, 2022



Raney's: Hey VIP, this Coupon is just for YOU! Use Code "SAVE100" to get $100 OFF your order of $1000 or more! Offer ends May 6th, excludes monthly specials.

Exhibit A

monthly specials.
https://raneys.attn.tv/l/sAZ
/mKfjc

MMS
10:35 AM

Friday, May 6, 2022



Raney's: This VIP Exclusive
Sale ends at Midnight! Get
$100 OFF your order of
$1000+ w/ code "SAVE100"!
Excludes monthly specials.
https://raneys.attn.tv/l/JDH
/mKfjc

MMS
10:08 AM

Monday, May 9, 2022



Raney's: We're giving you
Early Access to the National
Chrome Day Sale! Get $25

Exhibit A

2:17

< **91026**   📞 📹 ⋮

Early Access to the National Chrome Day Sale! Get $25 Off Orders $250+, or $75 Off Orders $750+ w/ code "CHROMEDAY22"
https://raneys.attn.tv/l/lgS/mKfjc

MMS
10:08 AM

Wednesday, May 11, 2022



Raney's: Surprise! We're extending the Sale! Use code "CHROMEDAY22" to get $25 Off Orders $250+, or $75 Off Orders $750+, Ends at Midnight!
https://raneys.attn.tv/l/979/mKfjc

9:55 AM

Saturday, May 14, 2022



Exhibit A

‹   91026   📞  📹  ⋮

Friday, May 20, 2022



Raney's: Save some money for your piggy bank with code MAYSAVINGS at checkout! Sale ends Sunday @ Midnight. Shop: https://raneys.attn.tv/l/l8a/mKfjc

MMS
11:10 AM

Wednesday, May 25, 2022



Exhibit A

2:18

< 91026   ⋮

Wednesday, May 25, 2022



Raney's: SALE EXTENDED!
Save $25, $50, or $100 w/
code "SAVEBIG" at Checkout!
Exclusions Apply, Shop Now
> https://raneys.attn.tv/l/i8u
/mKfjc

MMS
9:50 AM

Friday, May 27, 2022



Raney's: Get 10% OFF

    

|||  <

Exhibit A

 

< 91026

Raney's: Get 10% OFF
All Weekend! Use Code
"BIG10SALE" Now thru
Monday, Exclusions Apply.
Shop the Memorial Day
Weekend Sale >
https://raneys.attn.tv/l/56F
/mKfjc

MMS
9:32 AM

Monday, May 30, 2022



Raney's: The Memorial Day
Weekend Sale is coming to
an end at Midnight, Use code
"BIG10SALE" to get 10% OFF
your order! Exclusions apply.
https://raneys.attn.tv/l/26B
/mKfjc

MMS
10:12 AM

Thursday, June 2, 2022



Exhibit A

91026



Raney's: Looking for something new to upgrade your rig?! Get $20 OFF, or $40 OFF your order w/ code "JUNESALE" now thru June 12th.
https://raneys.attn.tv/l/HVI/mKfjc

MMS
9:55 AM

Monday, June 6, 2022



Raney's: TOP SECRET SALE! Get $100 Off Orders $1,150+ w/ code "SECRET100", now through June 10th. Excludes Monthly Specials.

Exhibit A

< 91026

https://raneys.attn.tv/l/Udy
/mKfjc

MMS
9:56 AM

Sunday, June 12, 2022



Raney's: Don't let this Deal
slip away! Get $20 OFF
$250+, or $40 OFF $500+
w/ code "JUNESALE"!
Exclusions Apply, Sale Ends
Tonight.
https://raneys.attn.tv/l/yFl
/mKfjc

MMS
10:06 AM

Friday, June 17, 2022



2:18

< 91026



Raney's: Hey Dad, This Sale is for YOU! Get $15 Off $150+, or $30 Off $300+ w/ code "DADSDEAL" at Checkout! Sale ends Sunday, exclusions apply. https://raneys.attn.tv/l/kEJ/mKfjc

MMS
11:16 AM

Monday, June 20, 2022



Raney's: The Father's Day Sale has been EXTENDED! Get $15 Off Orders $150+, or $30 Off Orders $300+ w/ code "DADSDEAL" Sale ends at Midnight, exclusions apply.

Exhibit A

 

< **91026**                    📞  📹  ⋮

code "DADSDEAL" Sale ends
at Midnight, exclusions apply.
https://raneys.attn.tv/l/ooY
/mKfjc

MMS
9:55 AM

Friday, June 24, 2022



Raney's: Coming in HOT >>>
Get Free Shipping on Orders
$149+ w/ code "HOTDEAL",
now through June 27th.
Exclusions Apply.
https://raneys.attn.tv/l/5Gw
/mKfjc

MMS
4:00 PM

Sunday, June 26, 2022

 

        

Exhibit A         ⬜   

< **91026**   📞  📹  ⋮



Raney's: Don't Pass This
One Up! Get 20% OFF All
Hogebuilt Products Now
through July 8th.
https://raneys.attn.tv/l/mpN
/mKfjc

MMS
10:08 AM

Monday, June 27, 2022

 Raney's: There's not
much time left! Use code
"HOTDEAL" to get Free
Shipping on Orders $149+.
Ends at Midnight, Exclusions
Apply.
https://raneys.attn.tv/l/72H
/mKfjc

10:35 AM

Friday, July 1, 2022   ⌄



🖼  📷  +   |           😊  ᳇

# Exhibit A

|||   ◯   ‹

2:25

< 91026 



Raney's: The Independence Day Sale Starts Now! Get 10% OFF Storewide w/ Code "FIREWORKS"! Now through Monday, Exclusions Apply. https://raneys.attn.tv/l/z1C /mKfjc

MMS
9:55 AM

Monday, July 4, 2022



Raney's: Don't Miss The Grand Finale! 10% OFF Ends at Midnight! Use Code "FIREWORKS" at Checkout! Exclusions Apply. https://raneys.attn.tv/l/08i /mKfjc



MMS

      

# Exhibit A

 

< **91026**  📞 📹 ⋮

10:08 AM

Friday, July 8, 2022

 

"It is so nice having a mattress that fits
perfectly in my bunk! Our online purchase
was easy, the shipping was fast and the
price was right. Thanks Raney's!
**- Keith G.**

⭐ ⭐ ⭐ ⭐ ⭐  41 reviews 

Raney's: Our Customers Love
These Products, and We
Think You Will Too! See All 10
& Read The Reviews >
https://raneys.attn.tv/l/xCm
/mKfjc

MMS
3:55 PM

Tuesday, July 12, 2022



⌄

  + |  ∿

Exhibit A

||| ◯ ‹

< **91026**



Raney's: This Deal Ends Wednesday at Midnight! Get 10% OFF All Raney's Branded Products w/ code "RANEYS48" Now!
https://raneys.attn.tv/l/Gc1/mKfjc

MMS
12:13 PM

Monday, July 18, 2022









Raney's: Get Ready To Fill Your Cart, All NEW Products ⌄

     

 

Exhibit A

‹   **91026**       ⋮

Have Arrived!
https://raneys.attn.tv/l/2r3
/mKfjc

MMS
10:31 AM

Saturday, July 23, 2022



Raney's: Shining Bright &
Back In Stock! Check Out Our
Selection of Extreme Vision
Headlights for Freightliner,
Kenworth, Peterbilt & More >
https://raneys.attn.tv/l/sqy
/mKfjc

MMS
9:56 AM

Monday, July 25, 2022

   ⌄

🖼   📷   ＋                    😊   ᯤ

**Exhibit A**        | | |        ◯        ‹

  

‹   91026



Raney's: Save BIG during our Christmas In July Sale! Get 10% OFF your order w/ code "SUMMERSANTA"! Now thru July 26th, exclusions apply. https://raneys.attn.tv/l/8pJ/mKfjc

MMS
9:56 AM

Thursday, July 28, 2022

 Raney's: At Raney's, our goal is to transform your truck. Let us know your truck make so we can provide better recommendations.

Reply your truck make:

1 = PETERBILT
2 = KENWORTH
3 = FREIGHTLINER
4 = VOLVO
5 = INTERNATIONAL
6 = MACK

      

Exhibit A   |||   ◯   

 

**‹ 91026** 📞 📹 ⋮

7 = OTHER                                    4:15 PM

Thursday, August 4, 2022

 Raney's: Is it time to replace that broken or worn out part on your truck? We've got you covered! Check these out > https://raneys.attn.tv/l/3Ad/mKfjc

9:55 AM

Friday, August 5, 2022



Raney's: You could WIN a Buyers Aluminum Underbody Truck Tool Box! No purchase necessary, Giveaway ends August 14th. Enter Here: https://raneys.attn.tv/l/VRN



MMS

          

Exhibit A       ⫴       ◯       ‹

‹ 91026   ⋮

August 14th. Enter Here: https://raneys.attn.tv/l/VRN/mKfjc

MMS
4:04 PM

Sunday, August 7, 2022



Raney's: Early Access Granted! During the Dollar Day Sale, you get $20 Off $250+ or $40 Off $500+ w/ code "DOLLARDAY". Shop Now > https://raneys.attn.tv/l/Z62/mKfjc

MMS
9:59 AM

Monday, August 8, 2022

8:58 AM 

 Raney's: You are unsubscribed from messaging. No more messages will be sent. Help at support@attentivemobile.com or 844-293-7265

8:58 AM

       

# Exhibit A

